**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRANDYWINE PROFESSIONAL SERVICES, LLC,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **STEVEN QUIGLEY, and** | **NO.  13-2865** |
| **TD BANK, N.A.,** | |
| **Defendants.** | |

**M E M O R A N D U M**

DuBois, J.                                                                    October 30, 2015

## I.   INTRODUCTION

This case arises from defendant Stephen Quigley's unauthorized withdrawal of funds from plaintiff Brandywine Professional Services, LLC,'s ("Brandywine") account with defendant TD Bank, N.A. ("TD") that allegedly caused Brandywine's business to fail.  Against TD, Brandywine asserts common law breach of contract and negligence claims, and a claim under Section 3-403 of the Pennsylvania Uniform Commercial Code.  13 Pa.C.S. § 3403.[1] Presently before the Court is TD's Motion for Summary Judgment as to all claims against TD. For the reasons stated below, the Court grants TD's Motion for Summary Judgment on all claims and enters judgment in favor of TD and against Brandywine.

---

[1] Brandywine also asserted a conversion claim against Quigley, and TD cross-claimed against Quigley, alleging that he was solely liable for any loss suffered by plaintiff.  A default was entered against Quigley for failure to appear, plead, or otherwise defend.

## II.   FACTS[2]

### A.  The Parties

Brandywine managed a loan modification business and used proprietary software to prepare loan modification papers for its customers to give to their financial providers.  Pl.'s Memorandum of Law in Opposition to Defendant TD Bank N.A.'s Mot. for Summary Judgment ("Pl.'s Mot.") at 2.  Ding Gu, Stephen Quigley, and Daniel Sheehan were all partners of Brandywine, and Ding Gu was the controlling member.  Pl.'s Mot. at 2; Def.'s Memorandum of Law in Support of its Mot. for Summary Judgment ("Def.'s Mot."), Exs. B, C.  On October 21, 2011, Brandywine opened a checking account with TD (the "Account").  Def.'s Statement of Undisputed Facts ("Def.'s SOF") ¶ 1.

### B.  Relevant Documents

Four documents governing Brandywine's Account with TD are relevant to this case: two Signature Cards, a New Business Account form, and a Deposit Account Agreement.  Def.'s Mot., Exs. A-D.

Initially, on October 20, 2011, Brandywine executed a Signature Card designating Gu, Quigley, and Sheehan as authorized signors for the Account.  On November 30, 2011, Brandywine executed a new Signature Card that removed Sheehan as an authorized signor and designated only Gu and Quigley as persons authorized to withdraw funds from the Account.  Def.'s SOF ¶¶ 2-3.  It is undisputed that both Signature Cards contain the following language:

> TD is "designated as a Financial Institution of and depository for the funds of [Brandywine], which may be withdrawn by checks, drafts, advices of debits, notes or other orders for the payment of monies (including electronic orders) bearing the signature of, or as otherwise authorized by, any one (1) of the

---

[2] As required on a Motion for Summary Judgment, the facts are presented in the light most favorable to Brandywine, the nonmoving party.  The facts are taken from the parties' Statements of Undisputed Facts and the motion papers.

following named manager(s), member(s), employees or designated individuals of [Brandywine] ("Agent"), whose actual signature is shown below…"

TD "is hereby directed to accept and pay without further inquiry any item drawn against any of [Brandywine's] accounts with [TD] bearing the signature of any Agent, or as otherwise authorized by such Agent, even though drawn or endorsed to the order of any Agent signing or tendered by any such Agent for cashing or in payment of the individual obligation of such Agent or for deposit to the Agent's personal account, and [TD] shall not be required or be under any obligation to inquire as to the circumstances of the issue or use of any item signed in accordance with the resolutions contained herein, or the application or disposition of such item or the proceeds of the item…"

Brandywine "agrees to [be] bound by the terms of the applicable Deposit Account Agreement(s), as may be revised or amended from time to time…" *Id.* ¶¶ 4-6; Def.'s Mot., Exs. B, C.

On October 21, 2011, Brandywine also executed a New Business Account form.  Def.'s SOF ¶ 7.  This form provides, in relevant part: "The undersigned acknowledge(s) receipt of the Deposit Account Agreement and Fee Schedule which govern my/our accounts with [TD]. My/Our use of this account shall evidence my/our acceptance of the terms and conditions as set forth in the Deposit Account Agreement, Fee Schedule, and any Addendums as the same may be amended from time to time."  *Id.*; Def.'s Mot., Ex. A.

The Deposit Account Agreement contains the following language:

"No Two-Signer Accounts: We do not offer accounts on which two or more signatures are required for a check or other withdrawal.  Notwithstanding any provisions to the contrary on any signature card or other agreement you have with us, you agree that if any Account purports to require two or more signers on items drawn on or withdrawals from the Account, such provision is solely for your internal control purposes and is not binding on us.  If more than one person is authorized to write checks or draw items on your Account, you agree that we can honor checks signed by any Authorized Signer, even if there are two or more lines on the items for your signature and two signatures are required."  Def's SOF ¶ 8; Def's Mot., Ex. D at 4.

Brandywine claims that it never received the Deposit Account Agreement, and TD has not produced a signed copy.  Pl's Statement of Undisputed Facts ("Pl.'s SOF") ¶ 1.

3

**C. Quigley's Withdrawal of Funds**

In December 2012, Brandywine received an investment of $45,000 from Gu and other investors, which Gu deposited into the Account with a personal check on December 11, 2012. Pl.'s Mot. at 1.  On December 12, 2012, at 3:50 p.m., Quigley went to a TD retail location in Westmont, New Jersey, and withdrew $45,000 from Brandywine's Account.  Def.'s SOF ¶ 9; Pl.'s Mot. at 3.  Quigley executed a Checking Withdrawal form signed by him alone.  Def's Mot. Ex. E.  Quigley used the $45,000 from Brandywine's Account to obtain an Official Check from TD made payable to himself, and he deposited that check into his personal account with TD. Pl's Mot. at 3.

At 5:10 p.m. on the same day, December 12, 2012, Gu went to a TD retail location on 11th and Chestnut Streets in Philadelphia and tried to stop payment on Quigley's withdrawal, but was informed that the transaction could not be reversed.  *Id.*  On December 13, 2012, Gu visited the same Westmont branch where Quigley had withdrawn the funds, and spoke with Assistant Manager Lauren Fischer about the withdrawal.  *Id.*  Gu told her that there should have been a note associated with Brandywine's Account that two signatures were required for all withdrawals.  *Id.*  Fischer confirmed that there was such a note, but told Gu that it bound only Brandywine's partners and could not override the Deposit Account Agreement provision prohibiting two-signer accounts and authorizing withdrawals with only one signature.  *Id.*; Pl.'s Mot., Ex. D.  Fischer testified at a deposition that the existence of such a note "wouldn't change the deposit account agreement" terms.  Pl.'s Mot., Ex. E at 31:21-22.  Fischer could not recall whether she had ever refused to process a withdrawal authorized by one signature because the account had a note requiring two signatures.  *Id.* at 32:17-21.  Gu then submitted to TD a fraud affidavit about Quigley's withdrawal, despite the fact that TD's employees—including Fischer—

informed him that the withdrawal was not fraudulent because it was authorized by the Deposit Account Agreement.  Pl.'s Mot. at 3; Pl.'s Mot., Ex. D.  TD assigned Ed Selb to investigate the incident and he concluded that there was no fraud.  Pl.'s Mot. at 4.

On December 31, 2012, nineteen days after the withdrawal, Quigley returned $45,000 to Brandywine's Account.  Def's SOF ¶ 10.  Nevertheless, Brandywine asserts that, as a direct result of the withdrawal and the unavailability of the funds for eighteen days, it lost investors, lost funds (when Gu, from his personal account, paid Quigley $13,000 in cash in exchange for returning the $45,000), and lost its employees (because, before Quigley returned the money, at Gu's request, someone who ran a similar business hired Brandywine's employees).  Pl.'s Mot. at 4-5.

### D.  Procedural History

On March 5, 2013, Brandywine filed this action in the Court of Common Pleas of Philadelphia County, asserting claims for breach of contract, negligence, and violation of Section 3-403 of the Pennsylvania Uniform Commercial Code against TD.  On May 23, 2013, TD removed the action to this Court based on diversity jurisdiction.  28 U.S.C. § 1441; *see* 28 U.S.C. § 1332.  TD filed an Answer to Brandywine's Complaint on June 6, 2013.  Presently before the Court is TD's Motion for Summary Judgment as to all of Brandywine's claims against TD, filed April 3, 2015.

## III.   LEGAL STANDARD

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A factual dispute is material when it "might affect the outcome of the suit under the governing law."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor."  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support a claim.  *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted).  The party asserting a fact "must support the assertion by . . . citing to particular parts of material in the record."  Fed. R. Civ. P. 56(c)(1)(A).

## IV.    DISCUSSION

Plaintiff asserts three claims against TD: breach of contract, negligence, and violation of Pennsylvania Uniform Commercial Code Section 3-403.  13 Pa.C.S. § 3403.  Plaintiff avers that TD had a contractual duty to require two signatures before permitting withdrawals from plaintiff's Account and alleges that this duty was violated when Quigley was permitted to withdraw $45,000 with only one signature on the withdrawal form.  Pl.'s Mot. at 7.  Plaintiff also avers that TD was negligent in failing to require two signatures for withdrawals from plaintiff's Account and in investigating whether Quigley's withdrawal was fraudulent.  *Id.* at 11.  Finally, Plaintiff avers that TD violated Pennsylvania UCC ("Pa. UCC") Section 3-403, which provides: "If the signature of more than one person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one of the required signatures is lacking."  13 Pa.C.S. § 3403.  TD has moved for summary judgment as to all of these claims. For the reasons set forth below, the Court grants TD's motion as to all claims.

**A. Brandywine's Breach of Contract Claim**

TD contends that summary judgment should be granted in its favor as to plaintiff's breach of contract claim because the contractual language explicitly disclaims any duty to require two signatures.  Def.'s Mot. at 8-9.  Plaintiff concedes that it "cannot[] dispute the existence of the [contract's] language," but argues that it is not bound by the language for two reasons.  First, plaintiff insists that Gu did not receive or sign the Deposit Account Agreement.  Second, plaintiff contends that "the mere existence of [the contract's] language is not the end of the inquiry," because Gu believed that TD would honor his request that Brandywine's Account require two signatures, and because TD issued checks to Brandywine that had two signature lines and read "Two Signatures Required Over $1000."  Pl.'s Mot. at 7-9; Ex. B.  The Court agrees with TD on this issue.

"Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages."  *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (internal quotation marks omitted).   "[A] contract is interpreted according to its plain language, and where a plaintiff's claim is foreclosed by the plain language of the contract, summary judgment is appropriate."  *Allegheny Design Mgmt., Inc. v. Travelers Indem. Co. of Am.*, 572 F. App'x 98, 100 (3d Cir. 2014).

For a contract to be enforceable, the parties must have agreed on the mutual obligations of their bargain. *Lackner v. Glosser,* 892 A.2d 21, 30 (Pa.Super.Ct. 2006).  This does not, however, require either party to possess, sign, or read the contract at issue.  "Thus where an offer is contained in a writing either [party] may, without reading the writing, manifest assent to it and bind himself without knowing its terms."  Restatement (Second) of Contracts § 23 (1981).  For

this reason, a contract may bind a party to the terms of another, explicitly referenced document if "the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447, n.10 (3d Cir. 2003) (explaining common law rule).

In this case, the plain language of the contract is clear: TD was not required to obtain two signatures from Brandywine's authorized representatives before validating actions in Brandywine's Account.  As plaintiff concedes, the documents governing Brandywine's Account with TD reiterate this provision three times:

> "No Two-Signer Accounts: We do not offer accounts on which two or more signatures are required for a check or other withdrawal.  Notwithstanding any provisions to the contrary on any signature card or other agreement you have with us, you agree that if any Account purports to require two or more signers on items drawn on or withdrawals from the Account, such provision is solely for your internal control purposes and is not binding on us."  Deposit Account Agreement, Def's Mot., Ex. D at 4.

> "[T]he funds of [Brandywine]. . . may be withdrawn by checks, drafts, advices of debits, notes or other orders for the payment of monies (including electronic orders) bearing the signature of, or as otherwise authorized by, any one (1) of the following named manager(s), member(s), employees or designated individuals of [Brandywine] ("Agent"), whose actual signature is shown below."  Signature Cards, Def.'s Mot. Exs. B, C.

> TD "is hereby directed to accept and pay without further inquiry any item drawn against any of [Brandywine's] accounts with [TD] bearing the signature of any Agent, or as otherwise authorized by such Agent, even though drawn or endorsed to the order of any Agent signing or tendered by any such Agent for cashing or in payment of the individual obligation of such Agent or for deposit to the Agent's personal account, and [TD] shall not be required or be under any obligation to inquire as to the circumstances of the issue or use of any item signed in accordance with the resolutions contained herein, or the application or disposition of such item or the proceeds of the item." Signature Cards, Def.'s Mot. Exs. B, C.

The Court rejects Brandywine's arguments it is not bound by the above-quoted language. The fact that Gu states that he never received a copy of the Deposit Account Agreement is

insufficient to raise a genuine issue of material fact under the law. *See Schwartz v. Comcast Corp.,* 256 F. App'x 515, 518 (3d Cir. 2007) ("Schwartz denies only that he received a copy of his subscription agreement. This is not sufficient to create a material dispute of fact."). Additionally, even if Gu never received a copy, Brandywine is still bound by the terms of the Deposit Account Agreement.  First, the Deposit Account Agreement was incorporated into the Signature Cards and New Business Account form by explicit reference.  Those documents— which Gu, Quigley, and Sheehan signed—provide that Brandywine "agrees to [be] bound by the terms of the applicable Deposit Account Agreement(s), as may be revised or amended from time to time," Signature Cards, Def.'s Mot. Exs. B, C, and that "[t]he undersigned acknowledge(s) receipt of the Deposit Account Agreement and Fee Schedule which govern my/our accounts with [TD].  My/Our use of this account shall evidence my/our acceptance of the terms and conditions as set forth in the Deposit Account Agreement, Fee Schedule, and any Addendums as the same may be amended from time to time," Def.'s Mot., Ex. A.  Second, incorporation of the Deposit Account Agreement's "No Two-Signer Accounts" provision, despite the fact that it is phrased more directly than the similar provisions in the Signature Cards, can hardly come as a surprise to Brandywine because its partners signed the Signature Cards *twice*.  Therefore, the plain language of the "No Two-Signer Accounts" provision of the Deposit Account Agreement and the similar provisions in the Signature Cards foreclose plaintiff's claim that TD had a contractual duty to require two signatures.

Finally, the Court rejects plaintiff's argument that TD's issuance of checks that had two signature lines changed or affected its duty under the contract.  The Deposit Account Agreement explicitly addresses such checks: "If more than one person is authorized to write checks or draw items on your Account, you agree that we can honor checks signed by any Authorized Signer,

9

*even if there are two or more lines on the items for your signature and two signatures are required.*" Def's Mot., Ex. D at 4 (emphasis added). Thus, plaintiff was notified that checks with two lines might be issued and that those lines did not affect TD's duty to secure only one authorized signature. Further, plaintiff has presented no evidence showing that Gu's "belief" that TD would honor his request to obtain two signatures was reasonable. Indeed, he *twice* signed the Signature Cards authorizing TD to release funds after securing only one signature.

Plaintiff has failed to provide any evidence to support its argument that the plain language of the Deposit Account Agreement, Signature Cards, and New Business Account form should not control. Thus, the Court grants TD's Motion for Summary Judgment as to plaintiff's breach of contract claim.

### B. Brandywine's Negligence Claim

Plaintiff alleges that TD was negligent because it breached its duty to require two signatures to authorize a withdrawal from Brandywine's Account. Pl.'s Mot. at 11. TD argues that the gist of the action doctrine bars Brandywine's negligence claim, as the doctrine prohibits a plaintiff from bringing an action in tort for the alleged breach of a duty that arises from a contract. Def.'s Mot. at 14. Brandywine responds that its negligence claim arises separately from the breach of contract claim because TD "was negligent both in its handling of the check at issue *and* in its 'investigation' thereafter." Pl.'s Mot. at 11 (emphasis in original). Again, the Court agrees with TD on these issues.

Under Pennsylvania law, the gist of the action doctrine "precludes plaintiffs from recasting ordinary breach of contract claims into tort claims." *Jones v. ABN Amro Mortg. Group, Inc.*, 606 F.3d 119, 123 (3d Cir. 2010) (quoting *Erie Ins. Exch. v. Abbott Furnace Co.,* 972 A.2d 1232, 1238 (Pa.Super.Ct. 2009)). "The critical conceptual distinction between a breach of

contract claim and a tort claim is that the former arises out of breaches of duties imposed by mutual consensus agreements between particular individuals, while the latter arises out of breaches of duties imposed by law as a matter of social policy." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486-87 (Pa.Super. 2007). Thus, "the nature of the duty alleged to have been breached. . . [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Dommel Properties LLC v. Jonestown Bank & Trust Co.*, No. 14-3564, 2015 WL 5438847, at *3 (3d Cir. Sept. 16, 2015) (quoting *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014)) (alteration in original). "[I]f the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Sunburst Paper, LLC v. Keating Fibre Int'l*, No. 06 Civ. 3959, 2006 WL 3097771, at *2 (E.D. Pa. Oct. 30, 2006).

When "a defendant's alleged failure to perform its duty under the contract is transformed into a claim that this failure amounts to" negligence or fraud, the gist of the action doctrine bars the tort claim. *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009). For example, in *Galdieri v. The Monsanto Co.*, 245 F.Supp.2d 636, 650 (E.D. Pa. 2002), plaintiffs asserted claims for breach of contract and tortious misrepresentation arising from defendant's failure to create an incentive compensation program, as required by the contract. The court dismissed the misrepresentation claim under the gist of the action doctrine because the claim was based on the contention that "Monsanto contractually agreed to establish a long term incentive plan and failed to perform." *Id.* Similarly, in *Factory Mkt., Inc. v. Schuller Int'l, Inc.*, the court applied the gist of the action doctrine to bar a negligence claim asserting that the defendant, who was contractually obligated to provide a watertight roof, negligently supervised and inspected its agent's work. 987 F. Supp. 387, 392-95 (E.D. Pa. 1997). The court

found that the same repairs that plaintiff alleged were negligently completed provided the basis for plaintiff's claim that defendant breached the contract.  *Id.* at 395.  "The obligation or duty to keep the roof watertight was only imposed on" defendant by the contract, without which plaintiff would have had no tort claim at all.  *Id.*

In this case, plaintiff first claims that TD was negligent "in its handling of the check at issue" by permitting Quigley to withdraw $45,000 from the Account based only on his signature.  Pl.'s Mot. at 11.  The only alleged source of this obligation to obtain two signatures, however, is the contract between TD and Brandywine.  The Deposit Account Agreement and Signature Cards explicitly address the issue of whether TD could disburse funds on only one signature, and thus the alleged duty to obtain two signatures is "intertwined with the subject matter of the contract."  *Sunburst Paper*, 2006 WL 3097771, at *2.  Brandywine has provided no authority supporting establishing an independent duty of banks to require two signatures before authorizing transactions in corporate accounts by authorized signers.  Therefore, this case is analogous to *Galdieri* and *Factory Market*.  Brandywine essentially asserts that TD was negligent because it failed to perform an alleged contractual duty to obtain two signatures.  The gist of the action doctrine does not permit Brandywine to "bootstrap" a tort claim merely by adding the word "negligent" to a breach of contract action.  *Galdieri*, 245 F. Supp. 2d at 650.  For these reasons, Brandywine's negligence claim is barred by the gist of the action doctrine.

Second, the negligent investigation claim is also barred by the gist of the action doctrine.  While plaintiff does not assert a parallel breach of contract claim based on TD's allegedly incompetent investigation, the Signature Cards explicitly address the issue of TD's duty to investigate transactions authorized by only one signature.  The Cards state that TD "shall not be required or be under any obligation to inquire as to the circumstances of the issue or use of any

item signed in accordance with the resolution contained herein."  Def.'s Mot., Exs. B, C.  Again, the alleged duty to investigate the withdrawal is intertwined with the subject matter of the contract.  *Sunburst Paper*, 2006 WL 3097771, at *2.  Furthermore, Brandywine again provided no authority establishing an independent duty of banks to investigate withdrawals that were executed in accordance the terms of their contracts with customers.  Thus, Brandywine's negligent investigation claim is also barred by the gist of the action doctrine.

For all of the foregoing reasons, the Court grants defendant's Motion for Summary Judgment on plaintiff's negligence claims.

### C. Brandywine's UCC Claim

Plaintiff's third and final claim is brought pursuant to Section 3-403 of the Pa. UCC, which provides: "If the signature of more than one person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one of the required signatures is lacking."  13 Pa.C.S. § 3403.  TD asserts that it is entitled to summary judgment because this section of the UCC applies only "*if* the signature of more than one person is required," which was not true under the contract at issue in this case.  Def.'s Mot. at 16-17.

The threshold issue for Section 3-403's applicability is whether two signatures were required.  The Court has already determined that the contract between TD and Brandywine did not contain such a requirement.  Therefore, the Court grants defendant's Motion for Summary Judgment as to plaintiff's Pa. UCC claim.

### V.   CONCLUSION

For the foregoing reasons, the Court grants defendant's Motion for Summary Judgment as to all claims, and enters judgment in favor of defendant, TD Bank, N.A., and against plaintiff, Brandywine Professional Services, LLC.  An appropriate order follows.

13